# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

HARRY MICHAEL WRIGHT,

       Petitioner,

vs.                                Case No. 4:11cv4-RS/CAS

MICHAEL D. CREWS, Secretary,
Florida Department of Corrections,

       Respondent.

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

Petitioner Harry Michael Wright, proceeding pro se, filed a 28 U.S.C. § 2254

petition on December 27, 2010.  Doc. 1.  After direction by this Court, Doc. 6, Petitioner

filed an amended petition, Doc. 7, and supporting memorandum, Doc. 8.  On

September 19, 2011, Respondent filed an answer, with exhibits.  Doc. 16.  Petitioner

filed a reply on October 18, 2011.  Doc. 19.  On May 16, 2013, Petitioner filed a motion

for summary judgment.  Doc. 33.

The matter was referred to the undersigned United States Magistrate Judge for

report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of

Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the

undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the § 2254 petition should be denied.

## Procedural History

By second amended information filed August 21, 2007, in the Second Judicial Circuit, Gadsden County, in case number 04-00830CFA, the State of Florida charged Petitioner Wright with two counts, in connection with events that took place in June 2004: (1) dealing in stolen property, a second degree felony, in violation of section 812.019(1), Florida Statutes, regarding a Chevrolet truck, the property of Robert Savard; and (2) grand theft, a third degree felony, in violation of section 812.014(2)(c)1., Florida Statutes, by knowingly obtaining, using, or endeavoring to obtain or use, $10,500 in U.S. Currency, the property of Russ Kern. Doc. 16 Ex. K at 125 (second amended information); *see id.* at 26 (original information, filed October 28, 2005, charging same offenses but with victim in both listed as David Barnhart), 113 (amended information, filed August 1, 2007, charging same offenses involving same victim as original information).

Wright proceeded to trial on August 21 and 22, 2007. *See id.* Ex. N. Wright represented himself, and he did not testify or present any defense witnesses. *See id*. at 4, 149. The jury found Petitioner guilty as charged. *See id.* at 211.

In a judgment and sentence entered September 20, 2007, the state trial court adjudicated Petitioner guilty of Count 2, grand theft, and sentenced him to ten (10)

years in prison, as an habitual felony offender, with credit for 125 days served. *Id*. Ex. K at 168-74, Ex. O at 35-36. The court did not enter a sentence on Count 1. *Id*. Ex. K at 168-74, Ex. O at 35-36.

Wright continued to represent himself, and appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D08-723. *See id*. Exs. P (pro se Initial Brief), Q (Answer Brief), R (pro se Reply Brief). The First DCA per curiam affirmed the case without an opinion. *See id.* Ex. S; <u>Wright v. State</u>, 13 So. 3d 472 (Fla. 1st DCA 2009). Wright filed a motion for rehearing, rehearing en banc, certification and written opinion, all of which the First DCA denied on August 5, 2009. Doc. 16 Exs. T, U. The First DCA issued the mandate on August 21, 2009. *Id*. Ex. V.

On March 29, 2010, Wright filed a pro se motion for post-conviction relief in the state trial court, pursuant to Florida Rule of Criminal Procedure 3.850, raising seven (7) grounds. Doc. 16 Ex. X at 1-71. On April 30, 2010, the state court entered an order summarily denying the first five grounds, denying grounds 6 and 7 without prejudice, and providing Wright leave to file a Rule 3.800(a) motion. *Id*. at 72-73.

On May 6, 2010, Wright filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a). *Id*. at 74-110.

On June 25, 2010, the state court rendered a final order denying the first five grounds, granting relief in part on Ground 6 and amending the amount of jail credit, denying Ground 7, and correcting a statutory citation. *Id*. at 72-73, 75-111. The trial court entered a corrected judgment and sentence on September 20, 2010. *Id*. at 229-35.

Wright appealed to the First DCA, assigned case number 1D10-4195. See Doc.

16 Ex. Y (Initial Brief), Z (Notice of No Answer Brief), AA (First DCA order directing

State to respond pursuant to Toler v. State, 493 So. 2d 489 (Fla. 1st DCA 1986)), BB

(State's Response). On November 22, 2010, the First DCA issued a per curiam opinion

affirming the denial of grounds one through six, but reversing and remanding the denial

of ground seven and directing the trial court to strike the portion of the sentence

imposing a $5,000 fine. Id. Ex. CC; Wright v. State, 48 So. 3d 928 (Fla. 1st DCA 2010).

The mandate issued on December 20, 2010. Doc. 16 Ex. DD. On January 4, 2011, the

state trial court entered an order amending the judgment and sentence to conform with

the First DCA's opinion. Id. Ex. I.

As indicated above, on December 27, 2010, Wright filed a § 2254 petition in this

Court. Doc. 1. After direction by this Court, Wright filed an amended petition and

supporting memorandum. Docs. 7 and 8. Respondent filed a response, with exhibits.

Doc. 16. Wright has filed a reply. Doc. 19.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody. Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d 1272 (11th Cir. 2011).

> In this case, in his amended § 2254 petition, Wright raises five grounds:
>
> (1) Trial Court Erred in Denying Petitioner's Motion for Discharge Based on the Speedy Trial Rule and Violation of Due Process;
>
> (2) Trial Court Committed Fundamental Error in Denying Petitioner's "Judgment of Acquittal Motion for Grand Theft" Based on Double Jeopardy, Thus Constituting a Violation of Due Process;
>
> (3) Trial Court Committed Fundamental Error in Denying Petitioner's Request for Special Jury Instruction to Comport with Section 812.025, Florida Statutes (2007), Thus Allowing Jury to Convict Petitioner of Both Stealing in Stolen Property and Grand Theft, a Violation of Due Process;
>
> (4) Trial Court Committed Fundamental Error by Denying Petitioner's "Motion to Dismiss for Lack of Proper Venue and Subject Matter Jurisdiction"; and
>
> (5) Trial Court Committed Fundamental Error by Violating Due Process in Denying Petitioner's Motion to Suppress All Identification Testimony Proffered by Alleged Victim Russ Kern and Investigating Officer Larry Smith.

Doc. 7 at 5-7 [ECF page #s]. Respondent asserts that Wright has not demonstrated he has been grievously wronged such that he should prevail, nor has he "facially overcome the 'presumption of finality and legality' of his state court conviction and sentence." Doc. 16 at 11. Respondent further asserts that some of Petitioner's claims cannot be

considered on the merits because Petitioner has not complied with the procedural requirements; therefore, pursuant to this Court's order of June 6, 2011 (Doc. 9), Respondent will await ruling on the procedural issues presented before addressing any remaining claims on the merits. *Id*.

### Ground 1: Denial of Motion for Discharge Based on Speedy Trial Rule

In his first ground, Petitioner Wright claims the state trial court erred in denying his motion for discharge pursuant to Florida's speedy trial rule. Doc. 7 at 5. He argues this violated due process. *Id*. In support of his claim, he sets forth the following time line:

• July 4, 2004 – Wright arrested by Gadsden County Sheriff's Office and placed in Gadsden County Jail;

• November 18, 2004 – State filed Probable Cause Affidavit and obtained warrant for Wright's arrest, charging him with three counts: (1) dealing in stolen property, (2) grand theft, and (3) forgery;

• State rearrested Wright three additional times;

• July 5, 2007 – Wright arrested again by Gadsden County Sheriff's Office after being transported from Memphis, Tennessee;

• August 21, 2007 – State filed amended information charging Wright with two counts: (1) dealing in stolen property, and (2) grand theft;

• August 21-22, 2007 – Wright proceeded to trial and found guilty by jury on both counts as charged in amended information

• September 17, 2007 – Wright filed pro se "Motion for Discharge" based on Speedy Trial Rule and Violation of Due Process;

• September 18, 2007 – Trial court denied Wright's Motion for Discharge

*Id*.  Wright indicates he raised this claim as the first point in his direct appeal.  *Id*.  In his supporting memorandum, Wright asserts that his speedy trial motions were docketed in July 2005, but the State never scheduled a hearing under Rule 3.191(p)(3), never filed a motion to strike under Rule 3.191(h), never filed for an extension under Rule 3.191(i). Doc. 8 at 4.  Wright argues the State loses jurisdiction to proceed to trial after the expiration of the speedy trial period; therefore, his judgment and conviction in this case is void.  *Id*. at 5.  Wright argues this case is indistinguishable from Dickey v. Florida, 398 U.S. 30 (1970).  Doc. 8 at 5-9.

Respondent asserts this is not a federal claim.  Doc. 16 at 11-12.  Respondent further asserts that, to the extent Wright does attempt to raise a federal constitutional speedy trial violation, his claim is unexhausted and now procedurally defaulted.  *Id*. at 13-17.

In his reply, Wright asserts that Respondent is incorrect, mistaken, and has ignored the fact that the right to a speedy trial is embodied in the Sixth Amendment to the U.S. Constitution.  Doc. 19 at 2.  Wright asserts that Respondent also ignored record evidence that the State conceded Wright was arrested on July 7, 2004, as well as record evidence concerning the State's failure to schedule a hearing under Rule 3.191(p)(3).  *Id*. at 2-3.  Wright indicates that Respondent also ignores evidence that, in Wright's direct appeal, the State argued Wright's pro se speedy trial motions were a nullity because Wright was represented by counsel, the Public Defender's Office; however, Wright filed his motions well before the appointment of the public defender on or about October 2005.  *Id*. at 3.  Wright asserts that the record "irrefutably

demonstrates" he was not represented by counsel. *Id*. at 4; *see* Doc. 16 Ex. K. Wright argues the record clearly shows he was available to the State at all times during the three-year period before his trial and the State flagrantly violated the Speedy Trial rule, Petitioner's due process rights, and constitutional right to speedy trial process guaranteed by Sixth Amendment. Doc. 19 at 6-7.

As the Eleventh Circuit has explained, "[t]here are three sources of speedy trial rights for criminal defendants: (1) the Sixth Amendment to the U.S. Constitution; (2) the federal Speedy Trial Act[, 18 U.S.C. §§ 3161-3174]; and (3) state speedy trial rules." Sneed v. Fla. Dep't of Corr., 496 F. App'x 20, 24 (11th Cir. 2012). The federal Speedy Trial Act does not apply to state court proceedings. *Id*.; *see* United States v. Bell, 833 F.2d 272, 277 (11th Cir. 1987). As a Florida prisoner, Wright's rights were governed by Florida's speedy trial rules. *See* Fla. R. Crim. P. 3.191; Sneed, 496 F. App'x at 24. "These rules are not controlling, however, because they are not based on clearly established federal law, having been promulgated by Florida and not the U.S. Supreme Court." Sneed, 496 F. App'x at 24; *see* 28 U.S.C. § 2254(d). "Indeed, questions of state law rarely raise issues of federal constitutional significance and, therefore, '[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Id*. (quoting Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983)). "A violation of Florida's speedy trial rules does not 'go to the fundamental fairness of the trial' so that it is cognizable in a § 2254 petition." *Id*. (quoting Davis v. Wainwright, 547 F.2d 261, 264 (5th Cir. 1977)).

Wright raised, as his first point in his direct appeal to the First DCA, his claim that the state trial court erred in denying his motion for discharge based on the speedy trial rule and violation of due process. *See* Doc. 16 Ex. P at ii, 5-12. Wright relied on only Florida Rule of Criminal Procedure 3.191 and Florida state cases. *See id.* In particular, Wright did not cite to Barker v. Wingo, 407 U.S. 514 (1972), or Dickey v. Florida, 398 U.S. 30 (1970), the case he now asserts is controlling, although he did at one point reference "[t]he Sixth Amendment right to a speedy trial." Doc. 16 Ex. P at 9; *see id.* at iv, vii. The First DCA per curiam affirmed the direct appeal without an opinion. Wright v. State, 13 So. 3d 472 (Fla. 1st DCA 2009) (table). This constitutes a ruling on the merits and is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011).

Thus, the issue is whether the Florida courts' determination that Wright was not deprived of the right to speedy trial was contrary to or involved an unreasonable application of clearly established federal law. *See* Sneed, 496 F. App'x at 25. In the Florida state courts, Wright alleged only a violation of Florida's speedy trial rules. His claim here, to the extent it is based on a violation of the Florida rules, is not cognizable in federal habeas review because it involves only state procedural rules, not errors of federal constitutional dimension. *See id.* "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Further, even assuming that Wright fairly presented and exhausted a claim alleging a violation of his Sixth Amendment right to a speedy trial, that claim also fails. Wright does not allege any facts to support a showing of prejudice, "which is a

'necessary ingredient' to a constitutional speedy trial claim." <u>Moore v. McNeil</u>, No. 4:09cv381-SPM/WCS, 2010 WL 4025867, at *4 (N.D. Fla. June 25, 2010); *see* <u>Barker</u>, 407 U.S. at 530 (holding that balancing test applies when determining whether defendant has been deprived of right to speedy trial, including four relevant factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant"); <u>Reed v. Farley</u>, 512 U.S. 339, 353 (1994) (citing <u>Barker</u> and explaining that "[a] showing of prejudice is required to establish a violation of the Sixth Amendment Speedy Trial Clause"). Wright has not asserted any prejudice due to any delay that occurred before filing of the information or before trial, and none is apparent. Indeed, as the State explained in its appellate answer brief, after Wright filed his notice of expiration of the speedy trial period on July 31, 2007, the state trial court denied the motion because the trial was to begin on August 10, 2007. *See* Doc. 16 Ex. Q at 15; Ex. K at 116. Thereafter, on August 10, 2007, Wright filed a motion to compel discovery, requesting copies of documents, and on August 21, 2007, Wright filed motions to suppress all identification testimony and other crimes testimony. *Id*. Ex. K at 122-23 (motion to compel), 126-27 (motion to suppress identification testimony), 128-29 (motion to suppress other crimes testimony). Thus, Wright was not prepared for trial within five (5) days of filing his demand for speedy trial, as required by the Florida rules, because he subsequently filed the motion to compel discovery and motions to suppress. *See* Fla. R. Crim. P. 3.191(g) (providing: "A demand for speedy trial shall be considered a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days."). Therefore, to the

extent Wright claims a violation of his Sixth Amendment right to a speedy trial, his claim

lacks merit as he has not shown any prejudice.

Based on the foregoing, Wright has not shown the state court's ruling resulted in

a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, or that it was based on an unreasonable determination of the

facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Wright is not

entitled to federal habeas relief, and this ground should be denied.

### Ground 2: Denial of Motion to Dismiss Grand Theft Charge Based on Double Jeopardy

In his second ground, Petitioner Wright argues the trial court committed

fundamental error in denying his motion for "judgment of acquittal motion for grand

theft" or "motion to dismiss" that charge based on double jeopardy, resulting in a

violation of due process.  Doc. 7 at 5.  Wright indicates that on July 7, 2005, in Sumter

County Case No. 04-412CF, he pled guilty to grand theft of a 2000 Silverado Truck, VIN

No. 1GCGC29U6YE299399, and uttering a forgery.  *Id*.  On July 14, 2005, Wright filed

a pro se motion to dismiss in Gadsden County Case 04-830CF, based on section

812.025, Florida Statutes, for double jeopardy.  *Id*.  The trial court denied Wright's

motion on February 9, 2006.  *Id*.  Wright indicates he raised this claim as his second

point in his direct appeal to the First DCA.  *Id*. at 5-6.  In his memo, Wright explains that

the same Silverado truck is the subject of the convictions in Sumter County and

Gadsden County.  Doc. 8 at 11.  Under section 812.025, Florida Statutes, a defendant

can be found guilty of either dealing in stolen property or grand theft, but not both in

connection with one scheme or course of conduct involving the same piece of property. *Id*. Wright indicates the court dismissed the dealing in stolen property charge in September 2007, and argues that the grand theft charge in his case should have been dismissed. *Id*. at 12.

Respondent asserts this claim lacks merit. Doc. 16 at 17. Respondent explains that a double jeopardy violation requires that a defendant be punished or prosecuted twice for violating a single legislatively-defined offense, which is based on a single instance of criminal conduct or criminal act, within a single criminal episode or transaction. *Id*. at 18-21. Here, Wright's conviction in Sumter County for grand theft of a vehicle from Robert Savard and his conviction in Gadsden County for grand theft of $10,500 in U.S. currency from Russell Kern are not based on the same criminal episode or the same conduct. *Id*. at 21-22. These two offenses were in different criminal episodes, had different victims, occurred in different locations, and on different days (the truck was stolen on June 16, 2004, and the currency was stolen on June 29, 2004). *Id*. at 22. Respondent asserts that Wright was properly convicted of two separate grand theft offenses. *Id*. at 22-25.

In his reply, Wright indicates the State has admitted the truck stolen in Sumter County was the same truck that was sold in Gadsden County. Doc. 19 at 8. Wright argues there is record evidence he was actually convicted of both dealing in stolen property and grand theft, because the trial court refused to give a special jury instruction to comport with section 812.025, Florida Statutes. *Id*. Wright argues that the conclusion of the Florida state courts that his conviction comported with due process

amounted to an unreasonable application of U.S. Supreme Court law as stated in

Blockburger v. United States, 284 U.S. 299 (1932).  Doc. 8 at 13.

Wright raised, as his second point in his direct appeal to the First DCA, his claim

that the state trial court committed fundamental error in denying his motion for acquittal

on the grand theft charge based on double jeopardy.  *See* Doc. 16 Ex. P at ii, 12-17.

The First DCA per curiam affirmed the direct appeal without an opinion.  Wright v.

State, 13 So. 3d 472 (Fla. 1st DCA 2009) (table).  This constitutes a ruling on the merits

and is entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d); Richter, 131 S.Ct. at

784-85.

Wright has not shown the state court's ruling resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law,

or that it was based on an unreasonable determination of the facts in light of the

evidence presented.  *See* 28 U.S.C. § 2254(d)(1)-(2).  In ruling on the "motion for

judgment of acquittal for double jeopardy," the state trial court rejected Wright's

argument:

> THE COURT: Let's talk about Count 2.  You have a motion as to Count 2?
>
> MR. WRIGHT: Your Honor, I filed a motion just for the whole case.
>
> THE COURT: Count 2 is different property.
>
> MR. WRIGHT: $10,500 cash, Your Honor, dealing with the same truck.  It deals with the same piece of property.
>
> THE COURT: It deals with the Savard truck?
>
> MR. WRIGHT: Yes, sir.

> MR. MYERS: It deals with it but the crime is not that he stole the truck. The crime is that, through false pretenses, he procured the money.
>
> THE COURT: But his argument, if I understand it right, is the same course of conduct.
>
> MR. WRIGHT: Same scheme. Same course of conduct. Same transaction. Same piece of property.
>
> MR. MYERS: Not using the same piece of property. The property in Sumter County is a pickup truck. The property here is $10,500 in US currency. Different property.
>
> THE COURT: And the argument, he's said, is that it's part of the same scheme.
>
> MR. WRIGHT: And the $10,500 cash was exchanged for the property of the truck.
>
> THE COURT: Now, that perspective, I disagree with you on that. I think you have a valid argument on the dealing with stolen property from what I can read in the case law. But not – I don't think you can go on and on ad infinitum and keep doing something like that and get away with that. So with regard to the grand theft, I'm going to deny your motion on that.

Doc. 16 Ex. N at 142-43. To the extent the state trial court found the charges did not concern the theft of the same property, the record supports that determination. Colonel Kern testified that he gave Wright $10,500 in cash when he bought the truck, which Kern later learned was stolen and returned to authorities. Doc. 16 Ex. N at 46-49. Kern did not recover his $10,500 cash. *Id*. at 49.

The United States Supreme Court has explained that the Double Jeopardy Clause provides three separate constitutional protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds*,

Alabama v. Smith, 490 U.S. 794 (1989) (concerning presumption of vindictiveness in

sentencing).  Although a copy of Wright's conviction in Sumter County could not be

located in the record, Respondent does not appear to dispute Wright's assertion that he

was convicted of grand theft as a result of his purchase, with a forged check, of a

Chevrolet Silverado from Robert Savard in Sumter County on June 16, 2004.  *See* Doc.

16 at 21-25; *id.* Ex. N at 36-37 (Savard's trial testimony concerning vehicle transaction).

See also id. Ex. N at 41-42 (Savard's trial testimony, on cross-examination, concerning

the disposition of the Sumter County case, that defendant entered plea and received

three years' probation).  *Compare* Doc. 16 Ex. N at 134 (Wright states, during argument

to state trial judge, that prosecutor "approached me with a certified copy of the

conviction in Sumter County that dealt with the Savard vehicle") *and id.* at 141 (Wright

again refers to "certified copy"), *with id.* at 140 (where, in response to Wright's motion

for judgment of acquittal on the dealing in stolen property charge, prosecutor

responded, "It's not been proven that he was convicted in Sumter County") *and id.* at

141 (in response to Wright's effort to enter into evidence copy of Sumter conviction,

prosecutor explains, "Your Honor, he can't enter that into evidence.  That's not a

certified copy, that's a copy of a copy that I've received from Sumter County.  I don't

even have the certified copy.").  The grand theft conviction (of the Silverado) in Sumter

County and the grand theft conviction (of $10,500 in U.S. currency) in Gadsden County

occurred in different locations, on different days (the truck was stolen on June 16, 2004,

and the currency was stolen on June 29, 2004), and involved different victims (Robert

Savard and Russ Kern).  Therefore, Wright's two convictions for grand theft resulted

from separate prosecutions for separate offenses.  This ground should be denied.

### Ground 3: Denial of Request for Special Jury Instruction

In his third ground, Wright argues the trial court committed fundamental error in

denying his request for a special jury instruction to comport with section 812.025,

Florida Statutes (2007).  Doc. 7 at 6.  This allowed the jury to convict Wright of both

dealing in stolen property and grand theft, resulting in a denial of due process.  *Id*.

Wright indicates that he requested a special jury instruction at the close of the State's

case, to comport with section 812.025, Florida Statutes.  *Id*.  The trial judge denied that

request, however.  *Id*.  Wright indicates he raised this as his third point in his direct

appeal to the First DCA.  *Id*.  In his supporting memorandum, Wright argues the trial

judge's failure to give the special jury instruction "converted a reasonable probability of

Petitioner being acquitted into a virtual directed verdict of conviction, and so infected the

entire trial that the resulting conviction violated due process."  Doc. 8 at 16.  Wright

argues his conviction was the result of ignoring record evidence regarding the request

for the special jury instruction and reaches a conclusion opposite to those reached by

the U.S. Supreme Court in Estelle v. McGuire, 502 U.S. 62 (1991), Cupp v. Naughten,

414 U.S. 141 (1973), Yates v. United States, 354 U.S. 298 (1957), and Stromberg v.

California, 283 U.S. 359 (1931).  Doc. 8 at 17.

Respondent asserts that, to the extent this is a federal claim, it is unexhausted.

Doc. 16 at 29.  Respondent indicates that Wright never raised in the state courts any

federal constitutional claim, federal due process claim, or reference to Yates, Estelle, or

Cupp, the cases Wright now relies on in his petition, as the basis for his claimed

entitlement to a special jury instruction. *Id*. at 30. Respondent argues this claim was

not fairly presented as a federal claim in the state courts and, therefore, it is

unexhausted and now procedurally barred. *Id*. at 30-31.

In addition, Respondent argues Wright is not in custody as a result of this claim.

*Id*. at 31. Respondent explains that Wright contends that, prior to the trial in this case,

Wright was convicted in Sumter County for grand theft of a 2000 Silverado Truck, and

this truck was the subject of the dealing in stolen property charge in this case;

accordingly, Wright argues that the trial court should have given a special jury

instruction regarding the charge of the dealing in stolen property. *Id*. The judgment

and sentence in this case does not contain a conviction and sentence for Count 1, the

charge of dealing in stolen property, however; rather, it contains only a conviction and

sentence for Count 2, grand theft of $10,500. *Id*.; *see* Doc. 16 Ex. K at 168-74.

Therefore, Respondent concludes that Wright is not being held in custody based on the

stealing in stolen property charge, and this court thus does not have jurisdiction to

consider granting habeas relief on this claim. Doc. 16 at 32.

In his reply, Wright asserts Respondent is incorrect, mistaken, and has ignored

record evidence. Doc. 19 at 10. Wright argues he presented his federal claim in his

Rule 3.850 motion, which the state court summarily denied. *Id*. at 10-11. Wright further

argues that the legal basis for his claim as raised in the state court is "the substantial

equivalent" to that relied on in his federal habeas petition. *Id*. at 11-12. Wright states

that his "***entire issue*** is that Petitioner requested a special jury instruction at the close

of the State's case-in-chief . . . to comport with Section 812.025, Florida Statutes (2007)." *Id*. at 14.

Wright raised this claim in his third point on appeal to the First DCA. Doc. 16 Ex. P at 17-20. Wright requested a special jury instruction based on section 812.025, Florida Statutes, concerning the charges of theft and dealing in stolen property and directing that the jury may return a guilty verdict only as to one of the charges, and the trial judge found the special instruction did not apply in this case. *Id*. Ex. N at 150-58. In its answer brief, the State indicated the First DCA had already decided this issue. *Id*. Ex. Q at 21; *see* Alexander v. State, 470 So. 2d 856 (Fla. 1st DCA 1985). In Alexander, the appellate court rejected the defendant's argument that the trial court's refusal to give the special instruction required a new trial; rather, the court held that because the jury found the defendant guilty of both offenses, the proper remedy was to vacate the conviction for the lesser offense. 470 So. 2d at 856-57. The State pointed out that is what the trial judge did in Wright's case, as the judge determined at sentencing that Wright could not be sentenced for both offenses and, therefore, sentenced him only on the grand theft offense. Doc. 16 Ex. Q at 22. The First DCA per curiam affirmed the appeal without an opinion. *See* Wright v. State, 13 So. 3d 472 (Fla. 1st DCA 2009) (table); *see also* Blackmon v. State, 58 So. 3d 343 (Fla. 1st DCA 2011) (following Alexander and concluding that proper remedy is for conviction of lesser offense to be vacated), *approved*, — So. 3d —, 2013 WL 4555655 (Fla. Aug. 29, 2013) (explaining section 812.025 is included in the Florida Anti-Fencing Act and approving First DCA's decision).

Wright has not shown the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2); *see also, e.g.*, Lewis v. Crosby, No. 8:02cv1844T27TBM, 2006 WL 319258, at *7-8 (M.D. Fla. 2006) (denying claims of trial court error and ineffective assistance of counsel concerning failure of trial court to instruct jury that it could not return guilty verdict on both charges of grand theft and dealing in stolen property, and explaining that, by dismissing third degree grand theft charge, trial court cured error and petitioner cannot demonstrate prejudice). This ground should be denied.

### Ground 4: Denial of Motion to Dismiss for Lack of Proper Venue and Subject Matter Jurisdiction

In his fourth ground, Wright claims the trial court committed fundamental error in denying his "Motion to Dismiss for Lack of Proper Venue and Subject Matter Jurisdiction." Doc. 7 at 6. Wright asserts that, on August 10, 2007, he filed a motion to compel discovery. *Id*. He indicates the State did not respond and did not provide a copy of the sworn, notarized statement of Russ Kern, a material witness. *Id*. Wright asserts the State did not "receive sworn testimony of the material witness, Complaintant [sic] Russ Kern." *Id*. Wright states that, "instead . . . the sworn hearsay testimony of the Investigating Officer Larry Smith was used to support the probable cause affidavit to procure the arrest of Petitioner Wright." *Id*. Wright indicates he raised this claim as the seventh point on appeal, in his initial brief filed in his direct appeal to the First DCA. *Id*.

In his supporting memo, Wright alleges the State did not have personal jurisdiction or subject matter jurisdiction for the probable cause affidavit, an arrest warrant, or criminal information. Doc. 8 at 14. Wright further alleges the state court lacked jurisdiction because Officer Smith filed a false probable cause affidavit. *Id*.

In his supporting memorandum, Wright explains that the alleged victim, Mr. Kern, stated the crime occurred at the Waffle House in Midway, Gadsden County, Florida, on or about June 29, 2004. Doc. 8 at 17. Wright asserts there is also a Waffle House in Mariana, Jackson County, Florida, on Highway 71, and, therefore, "[t]he proper venue and subject-matter jurisdiction cannot be determined in the absence of a *sworn*, notarized statement from the alleged victim, Russ Kern, in that un-sworn statements do not establish facts and cannot serve as the basis for a trial court's factual determination of the actual location of the alleged crime, thus determining the proper venue and establishing subject-matter jurisdiction." *Id*. at 17-18. Wright asserts that an information not based on the sworn testimony of a material witness is not a valid information. *Id*. at 18. Wright asserts the arrest warrant in this case was based on the sworn hearsay testimony of Officer Smith in support of the probable cause affidavit, and the information that was filed was not based on the sworn, notarized statement of Mr. Kern. *Id*. at 19-20.

Respondent indicates Wright has raised claims of purely state law that cannot be considered in a federal habeas proceeding. Doc. 16 at 32. Respondent explains that "the filing requirements and the information under sworn testimony requirement is unquestionably one of Florida law." *Id*. at 33; *see* Art. I, § 15, Fla. Const.; Fla. R. Crim.

P. 3.120, 3.140.  Respondent asserts that Wright's "perfunctory references to due process or other federal constitutional provisions are insufficient to convert an otherwise state law issue into a federal constitutional claim."  Doc. 16 at 33.  Respondent further asserts that even if considered a federal claim, it was not fairly presented to the state trial court and is, therefore, unexhausted and now procedurally defaulted.  *Id*. Respondent explains that nowhere in the state trial court motion to dismiss or in the state appellate brief did Wright reference the U.S. Constitution or federal case law.  *Id*. Thus, concludes Respondent, Wright did not fairly present a federal constitutional claim to the state courts.  *Id*. at 33-34.  Respondent asserts Wright has failed to demonstrate cause and prejudice for the default and this claim should be denied.  *Id*. at 34.

In his reply, Wright asserts that Respondent is incorrect and mistaken.  Doc. 19 at 16.  Wright argues the legal basis for the claim he presented to the state courts is "the substantial equivalent" of those in his federal habeas petition.  *Id*. at 17.  Wright indicates he presented his federal claim in his Rule 3.850 motion, which the state post-conviction court summarily denied.  *Id*. at 17-18.

A review of the record of exhibits filed in this case reflects that Wright raised, as his seventh point in his direct appeal to the First DCA, his claim that the state trial court committed fundamental error in denying his motion to dismiss for lack of proper venue and subject matter jurisdiction.  *See* Doc. 16 Ex. P at iii, 35-39.  Wright relied on only Florida Rules of Criminal Procedure and Florida state cases.  *See id.*  Thus, as Respondent urges, Wright has presented an issue purely of state procedural rules and law that is not cognizable in federal habeas review.  "[F]ederal habeas corpus relief

does not lie for errors of state law." Lewis, 497 U.S. at 780. Accordingly, this ground should be denied.

### Ground 5: Denial of Motion to Suppress Identification Testimony

In his fifth ground, Wright asserts the state trial court committed fundamental error in denying his motion to suppress all identification testimony by the alleged victim, Russ Kern, and the investigating officer, Larry Smith. Doc. 7 at 7. Wright indicates that, on August 21, 2007, he filed a motion to suppress this testimony and the state trial court held a hearing, during with Officer Smith stated that Wright was arrested in July 2004 and placed in the Jackson County Jail. *Id*. Wright indicates he was not arrested by Officer Smith and was not placed in the Jackson County Jail under Officer Smith's arrest authorization. *Id*. Officer Smith also stated that on July 6, 2004, at the Jackson County Sheriff's Office, a photo ID lineup was presented to the alleged victim, Russ Kern, and Mr. Kern picked #2, Wright, as the person who sold him the stolen 2000 Silverado truck for $10,500. *Id*. The state trial court denied the motion to suppress. *Id*. Wright states he raised this as the sixth point in his initial brief filed in his direct appeal to the First DCA. *Id*.

In his supporting memorandum, Wright explains that he argued in his motion to suppress that the photo ID lineup "was impermissibly suggestive and would irreversibly taint any in-court identification the alleged victim might give." Doc. 8 at 22. Wright recounts the circumstances of his arrest and, regarding the photo lineup, Wright asserts that at no time did Officer Smith state that he prepared the lineup or that he had any direct personal knowledge of Wright. *Id*. at 23. Wright argues the state trial court erred

in denying his motion to suppress, the in-court identification was unreliable, tainted, and impermissible because of the improper photo lineup. *Id*. at 23-24. Wright argues the conclusion of the Florida state courts that his conviction comported with due process amounts to an unreasonable application of U.S. Supreme Court precedent as set forth in Neil v. Biggers, 409 U.S. 188 (1972). Doc. 8 at 24.

Respondent contends that this claim is unexhausted and now procedurally defaulted because Wright did not fairly present a federal claim in the state courts. Doc. 16 at 34. Respondent asserts that nowhere in the motion to suppress or in his appellate brief did Wright allege a violation of his federal due process rights, rely on federal case law, or otherwise alert the state courts that he was asserting a federal claim. *Id*. at 36. Respondent asserts that, in the state court proceedings, Wright did not cite to Neil v. Biggers, 409 U.S. 188 (1972), the case on which he now relies. *Id*. Respondent asserts that Wright's vague references to due process in his appellate brief are not sufficient to fairly present a federal claim. *Id*. Respondent asserts that because Wright has not properly exhausted this claim and cannot now return to state court to do so, the claim is procedurally defaulted. *Id*. at 37. Respondent further asserts that Wright has not shown cause and prejudice for the default and, therefore, this claim must be denied. *Id*.

In his reply, Wright asserts Respondent is incorrect, mistaken, and has ignored record evidence. Doc. 19 at 18. Wright indicates that he presented his federal claim in his Rule 3.850 motion. *Id*.

Wright raised, as his sixth point in his direct appeal to the First DCA, his claim that the state trial court committed fundamental error in denying his motion to suppress all identification testimony by Russ Kern and Officer Smith. *See* Doc. 16 Ex. P at iii, 31-35. Wright cited mostly Florida state cases in support of his argument. Contrary to Respondent's assertion, however, Wright did cite a Florida case that quoted Manson v. Braithwaite, 432 U.S. 98, and he also specifically cited Neil v. Biggers, 409 U.S. 188 (1972), in support of his argument that the photo lineup used was impermissibly suggestive. *See* Doc. 16 Ex. P at 32, 34. In its appellate answer brief, the State argued there was nothing impermissibly suggestive about the photo lineup in this case. *Id*. Ex. Q at 36-39. The State further argued that the in-court identification of Wright by the victim, Mr. Kern, was based on the victim's independent recollection of Wright at the time of the crime. *Id*. at 40. The First DCA per curiam affirmed the direct appeal without an opinion. Wright v. State, 13 So. 3d 472 (Fla. 1st DCA 2009) (table). This constitutes a ruling on the merits and is entitled to AEDPA deference. *See* 28 U.S.C. § 2254(d); Richter, 131 S.Ct. at 784-85.

This ground rests on the state trial court's evidentiary ruling, "and like all evidentiary rulings, there is a significant difference between an evidentiary error and a denial of due process." Rembert v. Tucker, No. 4:09cv387-SPM/MD, 2012 WL 4344455, at *6 (N.D. Fla. Aug. 22. 2012). "A pretrial identification may amount to a due process violation if the pretrial procedure was 'unnecessarily suggestive and conducive to irreparable mistaken identification.'" *Id*. (quoting Stovall v. Denno, 388 U.S. 293, 302 (1967); *see* Manson, 432 U.S. at 97; Biggers, 409 U.S. at 188.

The record reflects that on August 21, 2007, just before the trial started, the state trial court held a hearing on Wright's motion to suppress the pretrial identification photo display prepared by Officer Smith and shown to the victim, Colonel Russell Kern. Doc. 16 Ex. M at 1-9 (transcript). In support of his motion, Wright argued he was never arrested by Officer Smith and "[h]e wouldn't know me from anybody" and, therefore, "he couldn't really prepare a photo ID display because he's never seen me before." *Id*. at 4. Wright argued that Officer Smith "was relying on those officers to put together a photo ID display and they did, gave it to Mr. Kern, he picked it out." *Id*. Wright argued that "Officer Smith, the investigating officer in Gadsden County, was basically spoon-fed all this information" and "[h]e comes back to Gadsden County, types up his report, I'm a guilty party." *Id*. at 4-5. The judge asked whether Wright was arguing "the photo array is unduly suggestive" and Wright answered, "Yes, sir, exactly." *Id*. at 5. The following then transpired:

> THE COURT: What's unduly suggestive about it?
>
> MR. WRIGHT: The fact that I was put in there by other law enforcement officers and not by Officer Smith.
>
> THE COURT: That's a different argument. What you wrote is it was unduly – well, impermissibly suggestive is what you wrote.
>
> MR. WRIGHT: Yes, sir.
>
> THE COURT: But you're talking about the array. But that's not what you mean. What you really mean is that you shouldn't have been in there because Smith –
>
> MR. WRIGHT: Officer Smith never arrested me.

THE COURT: I understand. Do you understand this is law enforcement, they don't have to do that. Law enforcement officers can rely on other law enforcement officers' --

MR. WRIGHT: My whole premises is it's hearsay. Inadmissible hearsay.

THE COURT: I understand. That's a different issue. Okay. But you've got two grounds here. One is that it's impermissibly suggestive. The other is that it's hearsay. So are you abandoning the first ground?

MR. WRIGHT: No, sir, I'm trying to argue both of them.

*Id*. at 6-7. The trial judge then asked the prosecutor for a response:

MR. MYERS: Yes, sir. As it's written, "impermissibly suggestive," I would say that this particular photo array that you have is probably as good a photo array as you could put together. Everybody has facial hair –

THE COURT: They're all white males. They're all a little heavier set. They all have mustaches. Some are a little grayer than others but they all have a mustache. Do you have the original of it?

MR. MYERS: I don't have the original. This was actually, I think, this photo was put together by Sumter County. All I have is copies.

THE COURT: That's fine.

MR. WRIGHT [sic]: But, I mean, as far as it being impermissibly suggestive, if he was the only white male, if he was the only white male with a mustache, all the classic things where he had a tattoo of "thug" across his forehead, things like that, that might make it overly suggestive. But this is probably as good a photo lineup as I've seen. As far as it being hearsay, prior identifications are non hearsay under the rule, so I would say it would be permissible.

THE COURT: I understand his argument to say that Smith apparently is the one who showed this to Kern?

MR. MYERS: Yes, sir.

THE COURT: And that he didn't – my understanding of the argument is he didn't arrest Mr. Wright. So Smith had to have gotten the information about Mr. Wright from someone else so that it's hearsay and it's impermissible to be included in there.

MR. WRIGHT: That's exactly right.

MR. MYERS: It's impermissible for it to be in photo lineup?

THE COURT: Right. That's his argument.

MR. MYERS: Law enforcement can get photographs for a photo lineup from anywhere they want to get them from. They can get them from driver's license. They can get from their own employee records. A lot of times they throw law enforcement officers in the lineup just to make sure they're getting the right guy. The fact that he puts a picture in there, he doesn't have to have probable cause or any first-hand knowledge of who they are to put their picture in a photo lineup. Odds are, of these six people, some of them, looks to me like most of them is probably not criminals. Looks to me like they got them from the driver's –

THE COURT: How can you tell that from a photo? (Laughter.) All right.

*Id*. at 7-8. The trial judge then made his ruling, finding the photo lineup not impermissibly suggestive and also rejecting Wright's hearsay argument:

Let me say this. I find – and I've done lineups myself. I don't know if you know anything about me. My background is in law enforcement, a long time ago, 30 years ago. It's not impermissibly suggestive. All of the males look very similar. They look very similar. They're all a little overweight, they all have facial hair. There is nothing that's impermissibly suggestive about it.

Regarding the hearsay, Mr. Myers is accurate when he says that you can get a picture from anywhere as long as they are all similar in size, in color, even if they are black and white. It doesn't – and it can be gotten from any source. The officer – and oftentimes the law enforcement agencies work in teams so that if you have a team of officers, one officer may show up at the lineup, somebody else actually put it together. So there's nothing hearsay – it's not hearsay and to the extent that it's not admissible in court. So I'll deny the motions on those motions in limine.

*Id*. at 8-9.

Although the photo lineup itself does not appear in this record, from the statements in the transcript of the hearing, quoted above, this Court cannot say that the

lineup was unnecessarily suggestive.  The state trial court specifically found, as fact, that all the subjects looked "very similar," all were "a little overweight," and all had facial hair.  Further, the court observed all the subjects were white males and had mustaches, with "[s]ome are a little grayer than others but they all have a mustache."  Because the record supports the state trial court's conclusion that the photo lineup was not impermissibly suggestive, the Biggers factors do not come into play.  Biggers, 409 U.S. at 196-98; see, e.g., Cikora v. Dugger, 840 F.2d 893, 897 (11th Cir. 1988) (concluding that photo lineup was not impermissibly suggestive where, among other things, all men in lineup had some facial hair).

Even considering the Biggers factors and the totality of the circumstances – particularly the witness's opportunity to view the criminal at the time of the crime, the witness's degree of attention, and the level of certainty demonstrated by the witness – the identification was reliable.  The victim, Colonel Kern, testified at trial that he met with an individual who claimed to be Robert Savard, in response to a classified advertisement regarding a 2000 Chevrolet Silverado.  Doc. 16 Ex. N at 46-49.  They met on June 29, 2004, at a Waffle House in Gadsden County, for 15 to 20 minutes; Kern test drove the truck and bought it.  Id. at 51, 54, 58.  Colonel Kern identified Wright as the individual who claimed to be Savard and who sold him the truck for $10,500 cash.  Id. at 48; see id. at 53-54 (cross-examination), 58 (redirect).  Kern testified he was "1,000 percent sure" and he had "not one bit of doubt in [his] mind whatsoever" that it was Wright who sold him the truck.  Id. at 58.  Kern was not questioned about the photo lineup.  Id. at 45-58.  (Indeed, from a review of the entire

trial transcript, it appears that only one witness, Investigator Jason McAlpin, from the Jackson County Sheriff's Department, was questioned about the photo lineup. *Id*. at 133. Specifically, on cross, Wright asked Investigator McAlpin if he prepared a photo lineup for Mr. Kern, and McAlpin responded that he did not and had no involvement in a lineup. *Id*.)

Moreover, as is evident from the above quotes from the transcript, Wright did not raise a serious challenge to the composition of the photo lineup in arguing it was impermissibly suggestive; rather, the focus of his argument concerned the fact that Officer Smith did not arrest Wright and, therefore, it was not permissible for him to assemble the photo lineup. Nothing indicates the state courts improperly rejected that argument.

Wright has not shown the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.


## Conclusion

Based on the foregoing, Petitioner is not entitled to federal habeas relief. The amended § 2254 petition (Doc. 7) and Petitioner's motion for summary judgment (Doc. 33) should be denied.

**Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

**Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner's amended § 2254 petition (Doc. 7) and Petitioner's motion for summary judgment (Doc.

33).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and

that leave to appeal in forma pauperis be **DENIED**.

IN CHAMBERS at Tallahassee, Florida, on September 10, 2013.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.